## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION AT COLUMBUS

STEVEN FARTHING,

                    Petitioner,            :     Case No. 2:23-cv-1865

    - vs -                                 District Judge Michael H. Watson
                                        Magistrate Judge Michael R. Merz

JAY FORSHEY, WARDEN, Noble
 Correctional Institution,

                                      :

                    Respondent.

---

## REPORT AND RECOMMENDATIONS; DECISION AND ORDER
## ON MOTION TO EXPAND THE RECORD

---

This is a habeas corpus case under 28 U.S.C. § 2254, brought *pro se* by Petitioner Steven Farthing to obtain relief from his conviction in the Fairfield County Court of Common Pleas for rape, gross sexual imposition, and corrupting another with drugs (Petition, ECF No. 4, PageID 13). The case is ripe for decision on the Petition, the State Court Record (ECF No. 9), the Return of Writ (ECF No. 10), and Petitioner's Reply (ECF No. 17).  Also ripe for decision are Petitioner's Motion to Expand the Record which includes requests for an unredacted record and an evidentiary hearing (ECF No. 15).

The Magistrate Judge reference in this case was recently transferred to the undersigned to help balance the Magistrate Judge workload in the District (ECF No. 18).

1

**Litigation History**

On September 20, 2018, the Fairfield County Grand Jury indicted Petitioner on one count of rape in violation of Ohio Revised Code § 2907.02 and two counts of gross sexual imposition in violation of Ohio Revised Code § 2907.05 with the victim identified as A.L.W., a minor.  Petitioner was also indicted on two additional counts of gross sexual imposition and one count of corrupting another with drugs in violation of Ohio Revised Code § 2925.02 with the victim identified as R.M.W., also a minor and A.L.W.'s older sister.  *State v. Farthing,* 2020-Ohio-4936 (Ohio App. 5th Dist. Oct. 14, 2020).

On April 18, 2019, the Fairfield County grand jury returned a superseding indictment charging Petitioner with one count of rape in violation of Ohio Revised Code § 2907.02(A)(1)(b), 2907.02(B), two counts of gross sexual imposition in violation of Ohio Revised Code § 2907.05(A)(4), 2907.05(C)(2) (Counts 2-3), and one count of corrupting another with drugs in violation of Ohio Revised Code § §2925.02(A)(4)(a), 2925.02(C)(3) (Count 4), all with victim R.M.W.  (Superseding Indictment, State Court Record, ECF No. 9, Ex. 4).  The case proceeded to jury trial and Petitioner was found guilty on all counts. *Id.* at Ex. 14.

Farthing appealed to the Ohio Fifth District Court of Appeals which affirmed in the decision cited above.  The Ohio Supreme Court declined to accept jurisdiction over a subsequent appeal (Entry of Feb. 16, 2021, State Court Record ECF No. 9, Ex. 25).

On January 11, 2021, Petitioner filed a Petition to Set Aside Conviction under Ohio Revised Code § 2953.21 (*Id.* at Ex. 29).  The Common Pleas Court denied the Petition (*Id.* at Ex. 36), the Fifth District affirmed (*Id.* at Ex. 46), and the Ohio Supreme Court again declined to exercise jurisdiction (*Id.* at Ex. 52).

Farthing then filed his Petition in this Court, pleading the following grounds for relief:

**Ground One**: Violation of the 5th Amendment Right to Remain Silent and Not Testify During Trial and it Not Being Used Against You.

**Supporting Facts:** Jury was tainted by the fact that Mr. Farthing did not testify. "One particular juror specifically stated that even though she understood the Defendant had a Constitutional Right not to testify at his own trial, that "if (she) was in that position, then (she) would want to tell her side of the story," and that maybe he should have testified; in addition, when she made this statement, several other jurors nodded in agreement, and another noted that his failure to testify might have impacted the jury's consideration of the facts." (Motion for Aquital [sic], pg.8, line 3-12).

**Ground Two**: Mr. Farthings Constitutional Rights of Due Process under the 5th + 14th Amendments, as well as the Confrontation and Compulsory Process Clauses of the 6th Amendment were violated by the exclusion of the evidence of an alternate perpetrator of Rape.

**Supporting Facts:** Within the record, specifically Transcripts from pretrial/ motions, beginning page 28, line 17 Sarah McGee of Franklin County CPS identifies the children's first alleged perp, Hassan, the mother's boyfriend who wasn't investigated because they couldn't locate him. This continues to Page 60. Within the discovery, Page 4, Jennifer Sherfield of Fairfield County CAC interviewer acknowledges the existence of a third-party abuse claim between Roxanne and Aspen, Mr. Farthing's son. Both of these instances were unconstitutionally barred by the Rape Shield Law according to the trial judge over no objections by the defense during PCR, The Rape Shield Law was constitutionally questioned in the appeal.

**Ground Three**: Ineffective Assistance of Trial Counsel.

**Supporting Facts:** Trial Counsels own Affidavit, attached to PCR admits he was ineffective and failed Mr. Farthing. He failed to introduce the exculpatory evidence because he wasn't allowed to by the court. He failed to call in experts to testify to the fact that there was no DNA related to Mr. Farthing. The States DNA expert's report says there is no DNA link, but he purjurs [sic] himself on the stand saying that there is, misleading the jury. Trial Counsel did not object, nor call him out during cross examination. Both the State and Mr. Farthing agreed to a polygraph, Defense failed to provide this due to the money concerns.

**Ground Four**: Ineffective Assistance of Post Conviction Counsel.

3

**Supporting Facts:** Even though PCR counsel argues that a DNA expert's review of the data and a polygraph would be beneficial to help prove Mr. Farthings innocence, he did not arrange for this to take place and present it to the Judge. This was used against Mr. Farthing by the Judge as lack of evidence. The Judge incorrectly stated that the third-party guilt/other perpetrator was "second hand" when it was mentioned in discovery, and during pretrial motion hearings and part of the record. This was the fault of PCR Cous. [sic]

**Ground Five**: Insufficiency of Evidence to Support Conviction.

**Supporting Facts:** As presented in the Motion for Acquittal, Issue I. Inconsistent and Insufficient Evidence Presented at Trial---- this issue was preserved through direct appeal in several arguments. No DNA, mis-identification, inconsistency of alleged victims [sic] statement, state did not meet their burden of proof.

(Petition, ECF No. 4, PageID 17, *et seq.*).

# Analysis

## Ground One:  Jury Misconduct by Infringement on the Privilege Against Self-Incrimination

In his First Ground for Relief, Petitioner claims his Fifth Amendment privilege to remain silent and not testify against himself was infringed by jury misconduct in that the jury held his failure to testify against him.

Respondent raises the affirmative defense that this Ground for Relief is procedurally defaulted (Return, ECF No. 10, PageID 1206).  The Warden asserts Petitioner has never presented his First Ground for Relief to any Ohio court and claims Petitioner has admitted as much (Return, ECF No. 10, PageID 1209, citing ECF No. 1 [should be 4], PageID 17).

At that place in the Petition, Farthing admits this issue was not raised in the Ohio courts

4

and he offers as an excuse that his appellate attorney rendered ineffective assistance of counsel. Ineffective assistance can excuse a procedural default, but the claim of ineffective assistance of appellate counsel must first be presented to the state courts in the manner prescribed for presenting such claims. *Edwards v. Carpenter*, 529 U.S. 446 (2000), In Ohio, claims of ineffective assistance of appellate counsel must be pleaded in an Application for Reopening the appeal under Ohio R. App. P. 26(B). *State v. Murnahan*, 63 Ohio St. 3d 60 (1992). Farthing has filed no such application.

In his Traverse Petitioner says nothing about presentation of his First Ground to the state courts and in particular does not discuss ineffective assistance of appellate counsel as a possible excuse, the excuse he raised in his Petition. Instead he refers to the presentation of this issue in his Motion for Judgment of Acquittal (ECF No. 17, PageID 1268). He claims his trial attorney "persuaded and coerced Mr. Farthing into not exercising his right to testify, telling him that the Jury cannot use this against him and he would be better off if he didn't testify." *Id.*

As part of the Motion for Judgment of Acquittal, Petitioner's trial attorney, Dorian Keith Baum, wrote:

> Finally, when Counsel interviewed the jurors after the verdict had been rendered, the jurors noted that they considered all parts of the evidence and testimony, but one particular juror specifically stated that even though she understood the Defendant had a Constitutional Right not to testify at his own trial, that "if (she) was in that position, then (she) would want to tell her side of the story," and that he maybe should have testified; in addition, when she made this statement, several other jurors nodded in agreement, and another noted that his failure to testify might have impacted the jury's consideration of the facts.

(State Court Record, ECF No. 9, Ex. 12, PageID 120). Mr. Baum had been trial attorney and presumably is the attorney whom Farthing is accusing of "persuading and coercing" him into not testifying.

The Magistrate Judge concludes Farthing at least made an initial presentation of this claim in the Motion for Acquittal which was filed October 4, 2019.  The State opposed the Motion, stating in relevant part:

> The State will not get into a battle about what was said or not said, other than to point out that what defense counsel alleges was said is absolutely false and intentionally misleading to this Court. The jurors asked defense counsel specifically, prior to answering any of his questions, whether their answers could be used to somehow "overturn the verdict', to which defense counsel answered "No." However, defense counsel is still attempting to use this information, unfortunately, it is barred. This information was provided to defense counsel after the verdict was rendered, which is precisely what the *aliunde* rule prohibits. Before dismissing the jury postverdict, the Court individually polled the jurors on the record, and each juror affirmed the verdict.  Moreover, during voir dire in this case,' all jurors affirmed that they would not hold it against the defendant if he chose not to testify. There is no evidence that the defendant's substantial rights were material [sic] affected.

(Memorandum Contra Motion to Set Aside the Verdict, State Court Record, ECF No. 9, Ex. 13, PageID 129.)  The State Court Record as filed with this Court does not reflect any written decision by the trial judge on the Motion for Acquittal.  The Motion must therefore be deemed denied because the trial court proceeded to enter the verdict and to sentence Petitioner.  *Id.* at Exs. 14, 15, and 16.  A motion not expressly decided by a trial court when the case is concluded by judgment is ordinarily presumed to have been overruled. *Kostelnik v. Helper*, 96 Ohio St. 3d 1, 3 (2002), citing *State ex rel. V Cos. v. Marshall* (1998), 81 Ohio St.3d 467, 469 (1998); *Pentaflex v. Express Servs., Inc.*, 130 Ohio App.3d 209, 217 (2d Dist.1998); *State v. Harden,* 2012-Ohio-1657, ¶ 23 (Ohio App. 2d Dist. 2012).

The jury misconduct issue raised in the Motion for Acquittal was not raised on appeal (See Defendant-Appellant's Brief, State Court Record, ECF No. 9, Ex. 18, PageID 142).  The procedural default doctrine in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000).  That is, a petitioner may not raise on federal habeas a federal constitutional rights claim he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982).  "Absent cause and prejudice, 'a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review.'"  *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000), quoting *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 110; *Wainwright*, 433 U.S. at 87.

> [A] federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule. E.g., *Beard v. Kindler*, 558 U.S. 53, 55, 130 S.Ct. 612, 175 L.Ed.2d 417 (2009).  This is an important "corollary" to the exhaustion requirement. *Dretke v. Haley*, 541 U.S. 386, 392, 124 S.Ct. 1847, 158 L.Ed. d 659 (2004).  "Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address" the merits of "those claims in the first instance." *Coleman* [*v. Thompson*], 501 U.S. [722,] 731-732, 111 S.Ct. 2546, 115 L.Ed.2d 640 [(1991)].  The procedural default doctrine thus advances the same comity, finality, and federalism interests advanced by the exhaustion doctrine.  See *McCleskey v. Zant*, 499 U.S. 467, 493, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991).

*Davila v. Davis*, 582 U.S. 521, 527 (2017). "[A] federal court may not review federal claims that were procedurally defaulted in state courts." *Theriot v. Vashaw*, 982 F.3d 999 (6th Cir. 2020), citing

*Maslonka v. Hoffner*, 900 F.3d 269, 276 (6th Cir. 2018) (alteration in original) (quoting *Davila v. Davis*, 582 U.S. 521, 527(2017)).

> "A claim may become procedurally defaulted in two ways." *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). First, a claim is procedurally defaulted where state-court remedies have been exhausted within the meaning of § 2254, but where the last reasoned state-court judgment declines to reach the merits because of a petitioner's failure to comply with a state procedural rule. *Id*.
>
> Second, a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule. *Id*.

*Lovins v. Parker*, 712 F.3d 283, 295 (6th Cir. 2013).

A petitioner can fail to meet procedural requirements in two ways:

> First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court. If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.
>
> Second, a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's ordinary appellate review procedures. If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted.

*Smith v. Warden, Toledo Corr. Inst*., 2019 U.S. App. LEXIS 18196 * 19 (6th Cir. Jun. 18, 2019), quoting *Lundgren v. Mitchell*, 440 F.3d 754, 806 (6th Cir. 2006)).

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Barton v. Warden, S. Ohio Corr. Facility,* 786 F.3d 450, 464 (6th Cir. 2015), *Guilmette v. Howes,* 624 F.3d 286, 290 (6th Cir. 2010)(*en banc*); *Eley v. Bagley*, 604 F.3d 958, 965 (6th Cir. 2010); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th

Cir. 1998), *citing Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261

F.3d 594, 601-02 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule
> that is applicable to the petitioner's claim and that the petitioner
> failed to comply with the rule.
> . . . .
>
> Second, the court must decide whether the state courts actually
> enforced the state procedural sanction, citing *County Court of Ulster
> County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777
> (1979).
>
> Third, the court must decide whether the state procedural forfeiture
> is an "adequate and independent" state ground on which the state
> can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not
> complied with and that the rule was an adequate and independent
> state ground, then the petitioner must demonstrate under *Sykes* that
> there was "cause" for him to not follow the procedural rule and that
> he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); accord, *Hartman v. Bagley,* 492 F.3d 347, 357

(6th Cir. 2007), *quoting Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002). A habeas petitioner

can overcome a procedural default by showing cause for the default and prejudice from the asserted

error. *Atkins v. Holloway*, 792 F.3d 654, 657 (6th Cir. 2015).

Failure to raise a constitutional issue at all on direct appeal is subject to the cause and

prejudice standard of *Wainwright v. Sykes*, 433 U.S. 72 (1977). *Murray v. Carrier*, 477 U.S. 478,

485 (1986); *Mapes v. Coyle,* 171 F.3d 408, 413 (6th Cir. 1999); *Rust v. Zent,* 17 F.3d 155, 160 (6th

Cir. 1994); *Leroy v. Marshall*, 757 F.2d 94, 97 (6th Cir.), *cert denied,* 474 U.S. 831 (1985). This

issue was available to be raised on direct appeal based on the Motion for Acquittal, but was not.

As noted above, that failure cannot be excused by ineffective assistance of appellate counsel

because that claim has also been procedurally defaulted because any application to reopen the

appeal to raise that issue would be untimely.

Ground One should be dismissed as procedurally defaulted.


**Ground Two: Improper Exclusion of Evidence of Alternate Perpetrator and Invalidity of Ohio's Rape Shield Law**

In his Second Ground for Relief, Petitioner claims his rights under the Due Process Clause, the Confrontation Clause, and the Compulsory Process Clause were violated by exclusion of proffered evidence of an alternate perpetrator in part under the Ohio Rape Shield statute, which he asserts is unconstitutional.

Respondent asserts the Rape Shield portion of this claim is also procedurally defaulted because it was not presented to the Ohio courts until appeal from denial of the petition for post-conviction relief and then abandoned on appeal to the Ohio Supreme Court (Return of Writ, ECF No. 10, PageID 1209).

Petitioner represented himself on appeal from denial of the post-conviction petition, He did not set forth separate assignments of error, but the appellate court analyzed the appeal as raising two claims relevant to this Ground for Relief:

> III. EVIDENCE OF SUPPOSED "THIRD~PARTY GUILT" SHOULD HAVE BEEN ADMITTED.
>
> IV. OHIO'S RAPE SHIELD LAW IS UNCONSTITUTIONAL.

*State v. Farthing*, Case No. 2022 CA 0002 (Ohio App. 5th Dist. Nov. 23, 2022)(copy at State Court Record, ECF No. 9, Ex. 46, PageID 383)("Farthing 2"). The court declined to reach the merits of this claim because it had not been raised in the trial court. *Id.* at ¶¶ 39-41, PageID 390.

Respondent asserts this portion of Ground Two is procedurally defaulted. Applying the *Maupin* analysis outlined above, the Court finds Ohio does have a relevant rule that an issue must

be raised in the trial court before it can be raised on appeal. The Fifth District applied this rule to preclude consideration of constitutionality of the Rape Shield Statute. *Farthing, supra,* at ¶ 40, citing *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 360 (1992). The rule is adequate in that it protects the appellate function of such courts. There is no indication that the rule is not independent of federal law which is to say it does not discriminate against federal questions.

Petitioner asserts this claim was raised in his direct appeal, but he provides no citation to any place in the record where that happened. He also claims it was raised in his post-conviction petition, but presents no citation to contradict the Fifth District's express finding that it was not. He admits he did not appeal this issue to the Ohio Supreme Court, but blames that on the Supreme Courts' fifteen-page limit on memoranda in support of jurisdiction. He explains

> [N]ot all points of contention could be addressed properly in that constricted space and Mr. Farthing had to choose his battles. The Ohio Supreme Court only accepts approximately 5% of the criminal cases presented to them, the 15 pages given become a marketing exercise of trying to put something shinny [sic] in front of them to get their attention and not about justice.

(Traverse, ECF No. 17, PageID 1269). Virtually every appellate court in the United States, including the Supreme Court, imposes page limits on filings. Petitioner admits this Rape Shield issue was not important enough for him to include and the page limit is an adequate and independent state procedural rule. The Rape Shield portion of Ground Two is procedurally defaulted and should be dismissed without reaching the merits.

## Ground Three: Ineffective Assistance of Trial Counsel

In his Third Ground for Relief, Petitioner asserts his trial attorney provided ineffective assistance of trial counsel in several ways. Respondent asserts this claim is barred by Ohio's *res*

*judicata* doctrine in that the claim could have been but was not asserted on direct appeal (Return of Writ, ECF No. 10, PageID 1210).

The Fifth District Court of Appeals construed this claim as Petitioner's First Assignment of Error:  I. Appellant's trial counsel was ineffective in failing to proffer an independent DNA expert and polygraph evidence.  *Farthing 2*, at ¶ 15.  The appellate court then found this claim was barred by *res judicata*:

> ¶ 28.  Upon review, we too find Appellant's challenges to his convictions are barred by res judicata. We find Appellant's motion is an attempt to relitigate issues this Court has previously considered and denied.
>
> ¶ 29.  Appellant herein argues that his trial counsel was ineffective in failing to allow him the opportunity to participate in a polygraph examination or to pursue independent DNA analysis.
>
> ¶ 30.  Appellant could have raised these matters on direct appeal. Further, Appellant has failed to show a substantial violation of any duty by his trial counsel or how the absence of a polygraph examination was prejudicial to Appellant's defense
>
> ¶ 31.  Appellant's first assignment of error is overruled.

*Farthing 2*, PageID 388.

Petitioner argues that he has supported his post-conviction ineffective assistance of trial counsel claim with evidence outside the record that was not before the Fifth District on direct appeal, to wit, the Affidavit of his trial attorney, Dorian Keith Baum, attached to his Post-Conviction Petition (State Court Record, ECF No. 9, Ex. 34, PageID 287).

A § 2953.21 petition may be brought to raise constitutional questions which depend on material outside the record on direct appeal.  *State v. Milanovich,* 42 Ohio St. 2d 46 (1975);  *Saylor v. Overberg*, 608 F.2d 670 (6th Cir. 1979);  *State v. Gibson,* 69 Ohio App. 2d 91 (Cuyahoga Cty. 1980).  However, the Ohio courts will not consider on a § 2953.21 petition any claim which could

have been raised on direct appeal; such claims are barred by the state doctrine of *res judicata*. *State v. Perry,* 10 Ohio St. 2d 175, 181 (1967); *Keener v. Ridenour*, 594 F.2d 581 (6th Cir. 1979); *State v. Cole*, 2 Ohio St. 3d 112 (1982). A habeas petitioner cannot avoid *res judicata* by presenting some evidence outside the direct appeal record; he or she must show that the issue could not have been raised and determined on the original appeal record.

There was no evidence of an independent DNA analysis or polygraph examination in the direct appeal record because they did not happen. In a sense, the ineffective assistance of trial counsel claim could have been presented on direct appeal by pointing to that absence. However, both the trial court and the court of appeals relied upon a more fundamental flaw in Petitioner's ineffective assistance of trial counsel claim, to wit, the evidence outside the record that Petitioner presented did not support a claim of ineffective assistance of trial counsel.

When the Baum Affidavit is examined, it completely undercuts any claim of ineffective assistance of trial counsel. He admits recommending against a polygraph examination because of substantial doubts in the scientific and legal communities about the reliability of that method. While Ohio courts will admit the results of a polygraph examination that has been stipulated to by the prosecutor, a defendant is bound by his stipulation and the results will be admitted even if they are unfavorable. As to an independent DNA analysis, as Attorney Baum points out, it would have had slight probative value because the State's DNA expert did not testify to any DNA evidence linking Petitioner to the offense. Because the Baum Affidavit was dehors the record but not supportive of Petitioner's claims, *res judicata* applied to the earlier decision.

The Sixth Circuit has repeatedly upheld Ohio's *res judicata* doctrine as an adequate and independent ground of state court decision. *Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007); *Buell v. Mitchell*, 274 F.3d 337 (6th Cir. 2001); *Coleman v. Mitchell*, 268 F.3d 417 (6th Cir. 2001);

*Byrd v. Collins*, 209 F.3d 486, 521-22 (6th Cir. 2000); *Rust v. Zent*, 17 F.3d 155, 160-61 (6th Cir. 1994)(citation omitted); *Van Hook v. Anderson*, 127 F. Supp. 2d 899, 913 (S.D. Ohio 2001). The Ohio courts have consistently enforced the rule. *State v. Cole*, 2 Ohio St. 3d 112 (1982); *State v. Ishmail*, 67 Ohio St. 2d 16 (1981).

"[P]resentation of competent, relevant, and material evidence *dehors* the record may defeat the application of *res judicata*." *State v. Lawson*, 103 Ohio App. 3d 307 (12th Dist. 1995). But here the Ohio courts correctly held that the Baum Affidavit did not defeat *res judicata*. Petitioner's Third Ground for Relief should be dismissed as procedurally defaulted.

**Ground Two: Improper Exclusion of Evidence of a Different Perpetrator**

In addition to his defaulted Rape Shield argument, Petitioner asserts other evidence of a possible other perpetrator – either the victim's mother's boyfriend or the Petitioner's son – was unconstitutionally excluded. Deciding this claim, the Fifth District wrote:

> [*P9] In his first assignment of error, appellant claims the trial court erred by excluding evidence of an alternate perpetrator of the rape. We disagree.

> [*P10] On March 22, 2019, appellant filed a motion in limine to permit admission of sexual abuse allegations involving the mother's boyfriend, H.J., and appellant's minor son, A.F. In support, appellant cited the rape shield law, R.C. 2907.02(D), which states in pertinent part:

>> Evidence of specific instances of the victim's sexual activity, opinion evidence of the victim's sexual activity, and reputation evidence of the victim's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, or the victim's past sexual activity with the offender, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its

14

inflammatory or prejudicial nature does not outweigh its probative value.

[*P11] Appellant acknowledged the statute is intended to prohibit the admission of prior sexual conduct of victims, but argued the aforementioned evidence was "highly relevant and appropriate to establish other possible alleged perpetrators and establish a cohesive narrative surrounding the alleged events in the present case." The evidence would be introduced "to demonstrate the inconsistencies and incoherence of the alleged victims' respective stories."

[*P12] Also in support, appellant cited to specific portions of an October 2018 interview by Nationwide Children's Hospital, Child Advocacy Center, of R.M.W.'s sister, A.L.W., wherein she alleged that H.J. had sexually assaulted her. The two children also related incidents of physical abuse between their mother and H.J. Appellant also cited to statements made by appellant and/or his wife that A.F. sexually assaulted R.M.W.

[*P13] Appellant argued if the evidence was inadmissible under the rape shield statute, it should be admitted with regard to the gross sexual imposition counts, and the trial court must admit the evidence of prior sexual conduct under Evid.R. 404(B) which states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. In criminal cases, the proponent of evidence to be offered under this rule shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

[*P14] A hearing on all pretrial motions was held on August 26, 2019. The hearing consisted of an in camera interview of R.M.W. to determine her competency given her young age, the voir dire examination of Sarah McGee, a child welfare intake caseworker with Franklin County Children Services seeking to quash a subpoena, and argument on the motion in limine. The trial court found R.M.W. competent to testify at trial. August 26, 2019 T. at 22. Ms. McGee testified to conducting an investigation in October 2018 on three separate intakes for sexual abuse, physical abuse, and emotional maltreatment regarding R.M.W. and her sister. Id. at 25,

28. This investigation was for new and different allegations than those substantiated in the Fairfield County investigation. Id. at 46-48, 50-52. Ms. McGee stated the Franklin County agency spoke with appellant and his wife, the children, and the children's mother, but did not speak with mother's boyfriend, H.J. as he could not be located or contacted. Id. at 28, 42. At the conclusion of her investigation, Ms. McGee determined any Franklin County allegations related to sexual abuse of the children by anyone were unsubstantiated. Id. at 42. Although an allegation of sexual abuse had been made by A.L.W. involving H.J., she recanted her disclosure. Id. at 49-50, 57. Therefore, the sexual abuse by H.J. was unsubstantiated. Id. at 50. Ms. McGee's intake regarding oral sex and appellant involved A.L.W., not R.M.W. Id. at 54, 59-60. Defense counsel agreed anything involving A.L.W. was not admissible, including her interviews with the Child Advocacy Center. Id. at 69-70, 78. It was A.L.W. who mentioned H.J. and then recanted. As for any evidence of sexual abuse by A.F., the trial court concluded the issue would be one of foundation as a lay witness could not offer opinion testimony without some significant foundation so as not to confuse the issue and mislead the jury. Id. at 85. The trial court ordered any issues relating to any allegations involving A.F. could not be inquired into without first conducting a voir dire of the witness to make sure the "witness would have sufficient foundation to answer the question and whether there at that time is any relevancy to it." Id. at 85-86. The trial court directed counsel to approach the bench during the trial for discussion and possible voir dire examination of the witness "[o]therwise the Court is not going to permit any testimony or allegations or argument concerning other sexual acts by other individuals." T. at 86. The trial court journalized its decision in an entry filed September 10, 2019, wherein it issued an in limine order directing defense counsel "is not permitted to inquire about any" allegations by A.L.W. against H.J. as they are not relevant to the claims by R.M.W. against appellant.

[*P15] On September 13, 2019, appellant filed another motion in limine to permit defense counsel to question the state's witnesses as to alleged conduct of other alleged perpetrators, to wit: H.J. and AF. Appellant argued he had a constitutional right to introduce evidence of third-party guilt.

[*P16] In his appellate brief at 16, appellant argues the trial court "repeatedly excluded defense attempts to introduce evidence relating to sexual abuse" by H.J. and A.F., but did not cite to specific portions of the transcript in support. Appellant argues he was denied the right to present evidence of third-party guilt, and the rape shield statute does not explicitly prohibit introduction of prior nonconsensual sexual conduct or evidence of third-party guilt.

16

[*P17] On April 22, 2020, the Supreme Court of Ohio filed its decision in State v. Jeffries, ___ N.E.3d ___, 2020-Ohio-1539, holding the following at ¶ 30: "We hold that the plain meaning of the term 'sexual activity' as used in the rape-shield law includes both consensual and nonconsensual sexual activity and that both are barred from admission into evidence by the rape-shield law, absent one of the specific exceptions listed in the law." Appellant's arguments do not fall under any of the specific exceptions. Given the holding in Jeffries, appellant's arguments as to the rape shield statute lack merit.

[*P18] In support of his argument to introduce evidence of third-party guilt, appellant cites the case of Holmes v. South Carolina, 547 U.S. 319, 326-327, 126 S.Ct. 1727, 164 L.Ed.2d 503 (2006), wherein the United States Supreme Court discussed the use of third-party guilt evidence as follows:

> While the Constitution thus prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the
> jury. * * * Plainly referring to rules of this type, we have stated that the Constitution permits judges "to exclude evidence that is 'repetitive ..., only marginally relevant' or poses an undue risk of 'harassment, prejudice, [or] confusion of the issues.'" * * *

A specific application of this principle is found in rules regulating the admission of evidence proffered by criminal defendants to show that someone else committed the crime with which they are charged. See, e.g., 41 C.J.S., Homicide § 216, pp. 56-58 (1991) ("Evidence tending to show the commission by another person of the crime charged may be introduced by accused when it is inconsistent with, and raises a reasonable doubt of, his own guilt; but frequently matters offered in evidence for this purpose are so remote and lack such connection with the crime that they are excluded"); 40A Am.Jur.2d, Homicide § 286, pp. 136-138 (1999) ("[T]he accused may introduce any legal evidence tending to prove that another person may have committed the crime with which the defendant is charged .... [Such evidence] may be excluded where it does not sufficiently connect the other person to the crime, as, for example, where the evidence is speculative or remote, or does not tend to

prove or disprove a material fact in issue at the defendant's trial" (footnotes omitted). (Citations omitted.)

[*P19] In *State v. Walker*, 5th Dist. Stark No. 2005-CA-00286, 2006-Ohio-6240, ¶ 46-48, this court quoted this same language from the *Holmes* case, and further stated at ¶ 49:

> However, "when a defendant wishes to implicate a specific individual, evidence of the third party's guilt is admissible only if the defense can produce evidence that 'tend[s] to directly connect such other person with the actual commission of the crime charged'". *Smithart v. Alaska* (1999), 988 P.2d 583, 586. [Footnotes and citations omitted].

Accord *State v. Benson,* 5th Dist. Guernsey No. 19CA00009, 2020-Ohio-1258.

[*P20] In the case at bar, for the evidence that H.J. or A.F. sexually abused R.M.W. to be relevant, there must be a connection between those allegations and the crime charged, thereby casting a reasonable doubt that appellant was the perpetrator.

[*P21] Allegations of sexual abuse were first reported in April 2018. R.M.W. never implicated H.J. or A.F. in sexually abusing her. Any allegations against H.J. were made by A.L.W. and then recanted. H.J. was not living with the children at the time of the sexual abuse allegations as the children were living with appellant and his family from July 2017 through the time of the allegations. Any allegations of sexual abuse by A.F. were told secondhand by appellant and/or his wife. August 26, 2019 T. at 79-85.

[*P22] Given the fact that the record is devoid of any evidence linking R.M.W.'s sexual abuse allegations to H.J. and/or A.F., we do not find a misapplication of the rules of evidence or a violation of appellant's constitutional rights.

[*P23] Assignment of Error I is denied.

*Farthing 1*.

Petitioner asserts this ruling violates his Due Process, Confrontation, and Compulsory Process rights, apart from his claim that the Rape Shield statute is unconstitutional.

Federal habeas corpus is available only to correct federal constitutional violations. 28

U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. 1 (2010)*; Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983).   "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); see also *Elmendorf v. Taylor*, 23 U.S. (10 Wheat.) 152, 160 (1825)(Marshall C. J.); *Bickham v. Winn*, 888 F.3d 248 (6th Cir. Apr. 23, 2018)(Thapar, J. concurring).

A habeas petitioner cannot convert a state evidentiary ruling into a constitutional question merely by putting a label on its drawn from the words of the Constitution.  Petitioner was not denied the right to confront anyone who accused him of these crimes nor the right to compel the attendance of witnesses on his behalf.  In essence he was denied the right to present evidence of an alternate perpetrator that the Fifth District found to be not probative on that issue.

In his Traverse, Petitioner claims "In the instant case, the petitioner has presented this court with new critical evidence in the form of the BCI reports (Lab Case: 18-70624, Agency Case: 18-03631) proving the States deception."  Petitioner gives no record reference to where that Report appears, has not obtained court permission to add it to the record, and in any event the Court is precluded from considering it. *Cullen v. Pinholster,* 563 U.S. 170 (2011).

The portion of Ground Two complaining of exclusion of evidence on a basis other than the Rape Shield statute should be dismissed with prejudice on the merits because it does not raised a federal constitutional issue.  See also *Bugh v. Mitchell*, 329 F.3d 496, 500 (6th Cir. 2003).

**Ground Four:  Ineffective Assistance of Post-Conviction Counsel**

In his Fourth Ground for Relief, Petitioner claims he received ineffective assistance of counsel from his post-conviction attorney.  This claim should be dismissed with prejudice because it does not state a claim upon which habeas corpus relief can be granted.  As noted above, federal habeas corpus relief is available only for violations of the United States Constitution.  But the Constitution does not guarantee effective assistance in post-conviction proceedings.

The right to appointed counsel extends to the first appeal of right and no further. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *Ross v. Moffitt*, 417 U.S. 600 (1974).  Ineffective assistance of counsel can excuse procedural default only when it occurs in a proceeding where a defendant is constitutionally entitled to counsel under the Sixth Amendment.  *Wainwright v. Torna*, 455 U.S. 586 (1982)(where there is no constitutional right to counsel there can be no deprivation of effective counsel); *Riggins v. Turner*, 1997 U.S. App. LEXIS 6115, *5 (6th Cir. 1997); *Barkley v. Konteh*, 240 F. Supp. 2d 708, 714 (N.D. Ohio 2002).

Ground Four should be dismissed with prejudice for failure to state a claim upon which habeas corpus relief can be granted.

**Ground Five:  Insufficiency of the Evidence**

In his Fifth Ground for Relief, Petitioner asserts his conviction is not supported by sufficient evidence.

An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v.*

*Virginia,* 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990)(en banc). In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt. *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *Smith v. Nagy*, 962 F.3d 192, 205 (6th Cir. 2020) (quoting *Jackson*). This standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* (quoting *Jackson*, 443 U.S. at 324). This rule was recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991). Of course, it is state law which determines the elements of offenses; but once the state has adopted the elements, it must then prove each of them beyond a reasonable doubt. *In re Winship, supra*. A sufficiency challenge should be assessed against the elements of the crime, not against the elements set forth in an erroneous jury instruction. *Musacchio v. United States*, 577 U.S. 237 (2016).

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

21

> See *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008); *accord Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011)(en banc); *Parker v. Matthews*, 567 U.S. 37, 43 (2012).

Petitioner raised this claim on direct appeal and the Fifth District decided it, along with his claim that his conviction was against the manifest weight of the evidence[1], as follows:

> ¶ 24 In his second and third assignments of error, appellant claims the jury's verdict was against the sufficiency and manifest weight of the evidence. We disagree.
>
> ¶ 25 On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus, following *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
>
> ¶ 26 [Omitted; deals with manifest weight standard.]

---

[1] While insufficiency of the evidence presents a federal constitutional claim, manifest weight does not.

¶ 27 Appellant was convicted of rape in violation of R.C. 2907.02(A)(1)(b) which states:

> (A)(1) No person shall engage in sexual conduct with another who
> is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:
>
> (b) The other person is less than thirteen years of age, whether or
> not the offender knows the age of the other person.

¶ 28 Appellant was also convicted of gross sexual imposition in violation of R.C. 2907.05(A)(4) which states:

> (A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:
>
> (4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person.

¶ 29 "Sexual conduct" and "sexual contact" are defined in R.C. 2907.01 (A) and (B), respectively:

> (A) "Sexual conduct" means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.
>
> (B) "Sexual contact" means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person.

¶ 30 Lastly, appellant was convicted of corrupting another with drugs in violation of R.C. 2925.02(A)(4)(a) which states:

23

(A) No person shall knowingly do any of the following:

    (4) By any means, do any of the following:

        (a) Furnish or administer a controlled substance to a juvenile who is at least two years the offender's junior, when the offender knows the age of the juvenile or is reckless in that regard.

        (b)

¶ 31 Appellant challenges his convictions on the following two issues: 1) the state failed to appropriately identify appellant as the perpetrator, and 2) the state failed to prove that the victim was not the spouse of appellant. Appellant also argues the lack of physical or corroborating evidence.

¶ 32 R.M.W. was seven years old at the time of trial. T. at 135. She was asked about knowing someone called "Uncle Steven" and she testified she knew him as being her uncle. T. at 137.

She was asked to identify Uncle Steven in court. Id. She said his jacket was gray and pointed. T. at 137. The prosecutor clarified the fingerpoint

(T. at 137-138):
Q. Can you tell me - - Do you see people - - Where are you pointing at?
A. In that - -
Q. So that's the defendant's table? Like right here at this table?
A. Uh-uh.
Q. Do you see - - how many people are seated at that table?
A. Three.
Q. Okay. And which one is Uncle Steven? Is he at the last seat, the middle seat or the seat closest to the door?
A. Um, he is right there.
Q. Is he wearing glasses?
A. Um, no.

MS. ELLISON: Can you have the Defendant please look at the witness, Your Honor?

UNIDENTIFIED SPEAKER: I'm sorry.

A. He is wearing glasses.
Q. He's wearing glc1sses? Okay.
MS. ELLISON: Your Honor, may the record reflect that the witness has identified the Defendant as Steven Farthing?

24

THE COURT: Yes.

¶ 33 Defense counsel objected, arguing R.M.W. "clearly pointed to the back of the courtroom twice and then she asks if we can have the Defendant look at her directing her to identify my client." T. at 138. The prosecutor argued appellant "was looking down hiding his face the entire time I was asking about identification." *Id.* The trial court determined the identification was subject to cross-examination and was a weight of the evidence issue. T. at 139.

¶ 34 Defense counsel did not cross-exam R.M.W. on the issue of identification.

¶ 35 Based upon the transcript, we find sufficient evidence of identification of appellant as the perpetrator.

¶ 36 Regarding appellant's argument that the state failed to prove that R.M.W. was not his spouse, again, R.M.W. was seven years old when she testified. T. at 135. She stated appellant was her uncle. T. at 137, 168. R.M.W.'s mother testified appellant was one of her older brothers. T. at 60. S.F. testified she was planning on starting divorce proceedings from appellant which would imply that she and appellant were married. T. at 445.

¶ 37 Based upon the testimony, we find sufficient evidence was presented to establish that R.M.W. was not the spouse of appellant.

¶ 38 S.B., the victim's mother and appellant's sister, testified how R.M.W. and he~ younger child came to be cared for by appellant and his wife in July 2017. T. at 61-70. In August 2017, appellant's wife surprised S.B. by formally filing for custody of the children so R.M.W. could be enrolled in school. T. at 71-74, 105, 107. In April 2018, R.M.W. told S.B. some things that concerned S.B. enough to call law enforcement and have the child transported to Nationwide Children's Hospital. T. at 83, 86-90. The children were returned to S.B.'s custody. T. at 114-115.

¶ 39 R.M.W. testified to living with appellant when she was four and five. T. at 139. She stated appellant made her touch his private places with her hands, specifically his "winkie." T. at 144-145. She then described what happened while she was touching it. T. at 147-148. She stated he made her touch his winkie again with her hands and also with her mouth. T. at 149-150. Again, she described what happened. T. at 151-157. Once, appellant made her smoke from "a little long thing and there is a little hole in the end and there ·is a big hole, and, um, you put some stuff in it and you light it up

25

with a lighter." T. at 158. She did not know what was in the big hole, but her throat felt like fire. T. at 159-160. R.M.W. testified she spoke to two people at the hospital. T. at 184, 190.

¶ 40 Carolyn Apple, a pediatric sexual assault nurse examiner at Nationwide Children's Hospital, observed R.M.W.'s interview and physically examined her. T. at 196-197, 212. R.M.W. "disclosed that her uncle had her touch his genitals." T. at 213.

¶ 41 Jennifer Sherfield, a forensic interviewer at Nationwide Children's Hospital, interviewed R.M.W. T. at 222, 224. Portions of the videotaped interview were played to the jury. T. at 227; State's Exhibits 2 and 3. R.M.W. related her Uncle Steven wanted help to go potty, so she held his winkie for him in the bathroom. T. at 234. It happened one time. Id. Her description of what happened was nearly identical to her testimony. T. at 235-236, 241, 243-244. She also explained the smoking incident. T. at 236-238. She stated it happened twice. T. at 239. She then related how appellant made her put his hand on his winkie "a long time ago" and that happened in the living room. T. at 243-244. Appellant told her not to tell her mommy or anything that goes on in this house or "I would get a whooping and I would lose my bag of gum." T. at 243. In a second interview conducted six months later, R.M.W. stated Uncle Steven "put his winkie in my mouth" and that happened "two - - three times." T. at 283, 287. Her description of what happened was very similar to her testimony. T. at 291-293. She also stated she had to help him go to the bathroom and she had to touch his winkie. T. at 293-296. When asked if somebody else ever made her touch their private places, R.M.W. said "[n]o, only Uncle Steven." T. at 299.

¶ 42 Kerry Schnirring, a psychology assistant with Lighthouse Family Center, reviewed R.M.W.'s forensic interviews. T. at 324-325, 338. She explained very rarely does a child disclose everything at their first interview. T. at 326. It can take "weeks, months or even years for a child to feel comfortable enough to tell the whole story." Id. Ms. Schnirring opined "I was very concerned that this was, in fact, a trauma of sexual abuse that she experienced." T. at 338-339. R.M.W. was "very detailed and specific." T. al 339. Ms. Schnirring concluded (T. al 349):

> In my opinion after paying attention to her childlike language, the
> idiosyncratic details that she provided, the number of details that she
> provided, all the context she provided for why she was in certain rooms at certain times, that suggested to me that she has, in fact, experienced the trauma of sexual abuse and

that she would probably benefit from specific counseling to address that.

¶ 43 Ms. Schnirring watched very closely for coaching given "there was a bit of a custody issue going on," but did not see anything that she would typically see with a child who had been coached. T. at 351. On cross-examination, Ms. Schnirring agreed some of R.M.W.'s statements were inconsistent, but "you have to understand how five-year olds talk and how they jump around." T. at 366.

¶ 44 S.F., appellant's wife, testified for the defense. The children were dropped off at their home in July 2017. T. at 423. She agreed to care for the children for a week. T. al 425. After that, she contacted S.B. to come get the children, but S.B. always had an excuse. T. at 426. They agreed on a date in August for S.B. to pick up the children, but S.B. was a no-show. T. at 427. S.F. then decided to make the situation more permanent so she could enroll R.M.W. in school, take care of the children medically, and receive financial assistance. T. at 430. That is when she received emergency custody of the children in August 2017. T. at 431. After S.B. agreed in April 2018 to supervised visitation with her children, the allegations against appellant were made. T. at 440-441. At no time did R.M.W. report any incidents involving appellant to S.F. or exhibit any odd or alarming behaviors around appellant. T. at 444.

¶ 45 The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. Jamison*, 49 Ohio St.3d 182, 552 N.E.2d 180 (1990). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997).

¶ 46 Upon review, given the testimony of R.M.W., Ms. Sherfield, and Ms. Schnirring, we find sufficient evidence, if believed, to support the guilty finding, and we do not find any manifest miscarriage of justice.

¶ 47 Assignments of Error II and Ill are denied.

*Farthing 1.*

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the

United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000). Deference is also due under 28 U.S.C. § 2254(d)(2) unless the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings. The Fifth District's decision is clearly an objectively reasonable application of the *Jackson v. Virginia* standard. The jury's determination of the facts is also entitled to deference, particularly where Petitioner attempts in his Traverse to rebut those findings with statement of fact that are not part of the record. Ground Five should be dismissed with prejudice.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends the Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

June 6, 2024.

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6, but service is complete when the document is mailed, not when it is received. Such

objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.

s/ *Michael R. Merz*
United States Magistrate Judge

\#